IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| VICTOR MANUEL PLEITEZ<br>3011 South 16th Rd.<br>Arlington, VA 22204 | )<br>)<br>)<br>) | |
| and | )<br>) | CIVIL ACTION NO.: _____ |
| JORGE ALFARO PLEITEZ<br>3011 South 16th Rd.<br>Arlington, VA 22204 | )<br>)<br>)<br>) | JURY TRIAL DEMANDED |
| and | )<br>) | |
| WIL FRANCISCO ARDON<br>2404 Mary Baldwin Drive<br>Alexandria, VA 22307 | )<br>)<br>)<br>) | |
| v. | )<br>) | |
| STEPHEN CARNEY<br>25215 Mastery Place<br>Aldie, VA 20105 | )<br>)<br>)<br>) | |
| and | )<br>) | |
| PIERSBALMORAL, LLC<br>24741 Stone Station Terrace<br>Aldie, VA 20105 | )<br>)<br>)<br>) | |

## COMPLAINT

I.  **NATURE OF THIS ACTION**

1.      This is an action to recover unpaid minimum and overtime wages, promised wages, and other unpaid monetary compensation owed by the Defendants to Plaintiffs Victor Manuel Pleitez, Jorge Alfaro Pleitez, and Wil Francisco Ardon (collectively, "Plaintiffs"). Plaintiffs are Spanish speaking immigrants who were employed by Defendants Stephen Carney and PiersBalmoral, LLC (collectively, "Defendants") at different times between April 2005 and

April 2007 to make renovations and refurbishments to the homes and offices of Defendants' clients in Washington, D.C., Virginia, and Maryland.

2. Defendants promised to pay each Plaintiff a specific hourly rate for all hours worked. Beginning in 2006 and continuing through the remainder of their employment, however, Defendants ceased paying all wages owed to Plaintiffs on a weekly basis and instead began paying less than the promised hourly rate for hours worked or no wages at all. Defendants also began providing Plaintiffs with paychecks that were returned unpaid because of insufficient funds. In addition, Plaintiffs worked more than 40 hours per week during the majority of the weeks that they worked for the Defendants, but the Defendants never paid Plaintiffs overtime wages at the rate of one and one half times each Plaintiff's regular hourly rate for the hours worked in excess of 40 hours per week.

3. Frustrated by the growing amount of unpaid wages, all Plaintiffs ceased working for Defendants for a one week period in January 2007, then returned to work after Defendant Stephen Carney ("Carney") assured Plaintiff Victor Manuel Pleitez ("Victor Pleitez") that all wages due would be paid on completion of Defendants' current project and Victor Pleitez conveyed Carney's assurances to the other Plaintiffs. Once the project was completed, however, Defendants failed to pay the wages owed to Plaintiffs. By late April 2007, all Plaintiffs had resigned from the Defendants' employ because they had not been paid wages for the hours they worked.

4. Plaintiffs are owed full payment of wages for work performed while working as employees of the Defendants, as well as overtime wages calculated by the hour at one and one half times each Plaintiff's regular rate for hours worked in excess of 40 hours per week during the entire period of their employment. In addition, Plaintiff Victor Pleitez is owed additional

monetary compensation for unpaid vacation time, unused vacation time, unused sick time, and cash bonuses that were promised to him in consideration of his acceptance of employment with the Defendants.

5. Plaintiffs join their individual claims and bring this action against Defendants to redress numerous violations of federal and District of Columbia wage payment laws as well as common law violations occurring during the Plaintiffs' employment with the Defendants. Specifically, Plaintiffs bring this action pursuant to the Fair Labor Standards Act of 1938, *as amended*, 29 U.S.C. § 201 *et seq.* ("FLSA"); the D.C. Minimum Wage Act Revision Act of 1992, D.C. Code Ann. § 32-1001 *et seq.* ("DCMWA"); the D.C. Wage Payment and Collection Law, D.C. Code Ann. § 32-1301 *et seq.* ("DCWPCL"); and District of Columbia common law regarding breach of contract and quantum meruit. The Plaintiffs seek back pay in the form of hourly wages, including overtime wages, for labor and services already rendered on Defendants' behalf; liquidated damages; attorney's fees, costs, and expenses; and any other legal or equitable relief this Court deems proper to redress Defendants' unlawful employment practices. Plaintiff Victor Pleitez seeks additional monetary compensation for unpaid vacation time, unused vacation time, unused sick time, and bonuses that were promised to him in consideration of accepting employment with Defendants.

## II. JURISDICTION AND VENUE

6. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337 and 29 U.S.C. § 216(b) because this action arises under the laws of the United States and the Actions of Congress regulating commerce.

7. Pursuant to 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over Plaintiffs' state law claims because those claims arise from a common set of operative facts and

are so related to the claims in the action within the original jurisdiction of the Court that they form a part of the same case or controversy.

8. Venue is proper in the District of Columbia pursuant to 28 U.S.C. §§ 1391(b)(2) and 1391(c). A substantial part of the Defendants' wrongful conduct and the events giving rise to the claims alleged herein – including the uncompensated work performed by the Plaintiffs for the benefit of Defendants – occurred within the District of Columbia.

**III.   PARTIES**

9. **Plaintiff Victor Manuel Pleitez ("Victor Pleitez")** is a resident of Virginia. Victor Pleitez speaks Spanish and English. He was hired by the Defendants and began work in approximately April 2005 to perform renovations and refurbishments to homes and offices in Washington, D.C., Virginia, and Maryland and to recruit and hire other employees on behalf of Defendants. From April 2005 through April 2007, Victor Pleitez worked for the Defendants as an hourly paid employee. Defendants' employment offer to Victor Pleitez included a regular hourly rate of $20 per hour, two weeks of paid vacation during his first year of employment, paid sick leave, and cash bonuses at the completion of each project. Defendants specifically promised to pay him a $3,000 bonus upon completion of his first project – renovation and refurbishment of a home in Washington, D.C. Plaintiff Victor Pleitez accepted Defendants' offer. After Victor Pleitez had worked for the Defendants for approximately two months, Defendants raised Victor Pleitez's hourly rate to $22 per hour. At some time thereafter during Victor Pleitez's employment, Defendants raised his regular hourly rate again to $24 per hour.

10. **Plaintiff Jorge Alfaro Pleitez ("Jorge Pleitez")** is a resident of Virginia. He was hired by the Defendants and began work in approximately May 2006 to perform renovations and refurbishments to homes and offices in Washington, D.C., Virginia, and Maryland. From May 2006 through April 2007, Jorge Pleitez worked for the Defendants as an hourly paid

4

employee. Defendants offered to pay Jorge Pleitez a regular hourly rate of $12 per hour to perform work on Defendants' behalf. Jorge Pleitez accepted this offer. In or about October 2006, Defendants raised Jorge Pleitez's hourly rate to $14 per hour.

11.     **Plaintiff Wil Francisco Ardon** ("Ardon") is a resident of Virginia. He was hired by the Defendants and began work in approximately May 2006 to perform renovations and refurbishments to homes and offices in Washington, D.C., Virginia, and Maryland. From May 2006 through late February 2007, Ardon worked for Defendants as an hourly paid employee. Defendants offered to pay Ardon a regular hourly rate of $17 per hour. Ardon accepted this offer. In or about January 2007, Defendants decreased Ardon's regular hourly rate to $15 per hour and Ardon reluctantly accepted the decreased hourly rate for fear that, if he did not agree, Defendants would not pay him the back wages he was by then already owed.

12.     Throughout their employment with the Defendants, each Plaintiff was engaged in interstate commerce and handled goods that had been produced for and transported in commerce. Although Plaintiffs did the majority of their work for Defendants in Washington, D.C., at various times during their employment with Defendants each Plaintiff was required to travel between Washington, D.C., Virginia, and Maryland to work on different projects or to move materials. While employed with the Defendants, Plaintiffs often traveled to different states in the same day.

13.     Throughout their employment with Defendants, all of the Plaintiffs were "non-exempt" employees for purposes of the FLSA and DCMWA. Accordingly, Plaintiffs were entitled to receive the minimum wage and overtime compensation for hours worked in excess of 40 hours in one week at a rate not less than one and one half times each Plaintiff's regular hourly rate.

14. Upon information and belief, at all times relevant to this action, **Defendant Stephen Carney ("Carney")** was an owner, officer, and/or operator of Defendant PiersBalmoral, LLC. Carney was the individual specifically responsible for hiring, compensating, and directing the work activities of the Plaintiffs in this action. Carney is a "person" and "employer" subject to suit pursuant to the FLSA, DCMWA, DCWPL, and under common law, and was, upon information and belief, at all times relevant to this action, an owner, officer, and/or operator of an enterprise engaged in commerce for purposes of the FLSA.

15. Upon information and belief, at all times relevant to this action, **Defendant PiersBalmoral, LLC ("PiersBalmoral")** was a business entity with its main office located at 24741 Stone Station Terrace, Aldie, Virginia, 20105. Upon information and belief, at all times relevant to this action, PiersBalmoral employed day laborers to work on renovation and refurbishment projects in Washington, D.C., Virginia, and Maryland. PiersBalmoral is a "person" and "employer" that, upon information and belief, at all times relevant to this action, was doing business in the District of Columbia and is subject to suit pursuant to the FLSA, DCMWA, and DCWPL, and under common law, and was an enterprise engaged in commerce for the purposes of the FLSA. The acts set forth in this Complaint were authorized, ordered, performed, approved, and/or ratified by PiersBalmoral and/or its agents, employees, and/or representatives.

16. Upon information and belief, at all times relevant to this action, Carney was doing business as PiersBalmoral, an incorporated business entity operating in Washington, D.C., Virginia, and Maryland. Carney was responsible for the day-to-day operations of PiersBalmoral. Upon information and belief, at all times relevant to this action, this corporate defendant was Carney's alter ego, fully controlled by Carney, and used as a business conduit by Carney.

## IV.   STATEMENT OF FACTS

17. Plaintiffs in this matter were employed by Defendants at various times between April 2005 and April 2007 to perform carpentry, construction, brick and stone laying, painting, and drywall work in renovating and refurbishing private homes and offices in Washington, D.C., Virginia, and Maryland on Defendants' behalf.

18. At the time Plaintiffs were hired, Defendants offered to pay each Plaintiff a specified hourly wage rate. Each Plaintiff accepted his respective rate, forming an individual employment contract with Defendants. This hourly wage rate varied from $12 per hour to $24 per hour among the individual Plaintiffs.

19. At all times relevant to this action, Defendants provided the tools and materials necessary to complete the various duties at the work sites, provided supervision and instruction, and directed Plaintiffs to various work sites in Washington, D.C., Virginia, and Maryland.

20. During Victor Pleitez's employment, Defendants allowed Victor Pleitez to use a Ford pick-up truck owned by Defendants while traveling between states, while traveling between work sites or other locations and when transporting laborers and materials on behalf of Defendants.

21. While employed by Defendants, Plaintiffs generally worked between five and six days per week. The number of hours each Plaintiff worked each week varied but was generally between 40 and 48 hours per week, and during many weeks was more than 48 hours.

22. Throughout Plaintiffs' employment, Defendants failed to pay Plaintiffs overtime wages calculated by the hour at one and one half times each Plaintiff's regular hourly rate for hours worked in excess of 40 each week.

23. Until approximately mid to late 2006, Defendants designated Fridays or Saturdays as designated paydays and paid Plaintiffs their regular hourly wage for the hours worked during the prior week. The payment amount was different for each Plaintiff based on the number of hours worked during the week and each Plaintiff's hourly rate.

24. Beginning in mid to late 2006 and continuing through the remainder of Plaintiffs' employment, Defendants paid each Plaintiff less than his regular hourly wage and sometimes withheld wages altogether. Defendants acknowledged the mounting debt of unpaid wages owed to Plaintiffs and assured Plaintiffs that the wages Defendants owed them would eventually be paid.

25. At some time in 2006, Defendants began distributing paychecks to Plaintiffs that were returned to Plaintiffs unpaid because Defendants' checking accounts had insufficient funds. Plaintiffs were charged fees by their banks when paychecks were returned unpaid.

26. In February 2007, Plaintiff Ardon was notified by his bank that Defendants had placed a "stop payment" on a paycheck that he had deposited into his bank account. Plaintiff Ardon has been charged over $300 in banking fees and penalties as a result of cashing Defendants' paycheck.

27. On January 9, 2007, Plaintiffs ceased working for Defendants because of Defendants' failure to pay Plaintiffs the wages Plaintiffs were owed.

28. Approximately four days later, on or about January 13, 2007, Defendant Carney met with Victor Pleitez and promised him that Defendants would pay the wages owed to the Plaintiffs once they completed Defendants' current project. At Carney's request, Victor Pleitez conveyed Carney's promises to Plaintiffs Jorge Pleitez and Ardon.

29. In reliance on the promise of Carney, Plaintiffs returned to work in mid January 2007. Upon returning to work, Ardon was told that his hourly wage would be decreased from $17 per hour to $15 per hour. Ardon accepted the reduction out of fear that if he did not accept it, he would not receive the unpaid wages owed.

30. Upon completion of Defendants' project, and contrary to Defendants' promises, Defendants refused to pay all earned wages to Plaintiffs.

31. Ardon stopped working for Defendants in February 2007.

32. Victor Pleitez and Jorge Pleitez stopped working for Defendants in late April 2007.

33. From the date Plaintiffs Ardon and Jorge Pleitez last worked until the date of this filing, Defendants have not paid the back wages, including minimum, overtime and promised wages, which they owe to Plaintiffs Ardon and Jorge Pleitez.

34. From the date Plaintiff Victor Pleitez last worked until the date of this filing, Defendants have not paid the back wages owed to Plaintiff Victor Pleitez, including minimum, overtime and promised wages, which they owe to Plaintiff Victor Pleitez. Defendants also have not compensated Victor Pleitez for his used vacation time, unused vacation time, unused sick time, or promised cash bonuses.

35. Defendants failed to pay each Plaintiff overtime wages calculated by the hour at one and one half times the hourly rate for hours worked in excess of 40 per week.

36. The conduct of Defendants, as set forth above, was the result of a purposeful scheme to deny all wages owed to Plaintiffs and was willful, in bad faith, and caused significant monetary damages to each of the Plaintiffs named herein.

## COUNT I

**(Violation of the Fair Labor Standards Act of 1938, *as amended*, 29 U.S.C. § 201 *et seq.*)**

37. Plaintiffs allege and incorporate by reference the allegations set forth in Paragraphs 1 to 36 of this Complaint.

38. At all times relevant to this action, Plaintiffs were individuals who were engaged in commerce and were employed by Defendants within the meaning of the Fair Labor Standards Act of 1938, *as amended*, 29 U.S.C. § 201 *et seq.* ("FLSA"), and are entitled to the rights, protections, and benefits provided under the FLSA.

39. Defendants were an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA.

40. Defendants violated 29 U.S.C. § 206 by failing to pay each Plaintiff at least the minimum wage for every hour worked.

41. During most weeks that they worked for Defendants, Plaintiffs worked in excess of 40 hours each week. Defendants violated 29 U.S.C. § 207 by failing to pay Plaintiffs an overtime compensation rate of at least one and one half times each Plaintiff's regular rate of pay for every hour worked in excess of 40 hours per week.

42. Defendants did not reasonably believe that their acts or omissions were not in violation of the FLSA.

43. By their actions alleged herein, Defendants willfully, knowingly, and/or recklessly failed to satisfy the requirements for the payment of all wages for labor and services rendered, including overtime wages for employment in excess of 40 hours per week, in violation of the FLSA and corresponding federal regulations.

44. The employment and work records for Plaintiffs are in the exclusive possession, custody, and control of Defendants and Plaintiffs are unable to state at this time the exact

10

amounts due and owing to each of them. Defendants are under an obligation imposed by the FLSA, 29 U.S.C. § 211(c), and the regulations of the United States Department of Labor to maintain and preserve payroll and other employment records with respect to Plaintiffs and other employees similarly situated from which the amounts of Defendants' liability under the FLSA can be ascertained.

45. As a result of the unlawful acts of the Defendants, the Plaintiffs have been deprived of hourly wages, including overtime wages, in an amount to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and any other relief the Court deems fit.

## COUNT II

**(Violation of the D.C. Minimum Wage Act Revision Act of 1992, D.C. Code Ann. § 32-1001 *et seq.*)**

46. Plaintiffs re-allege and incorporate by reference the allegations set forth in Paragraphs 1 to 45 of the Complaint.

47. At all times relevant to this action, Plaintiffs were employed by Defendants within the meaning of the D.C. Minimum Wage Act Revision Act of 1992, D.C. Code Ann. § 32-1001, *et seq.* ("DCMWA"), and are entitled to the rights, protections, and benefits provided under the DCMWA.

48. Defendants violated D.C. Code Ann. § 32-1003(a) by failing to pay each Plaintiff at least the minimum wage for every hour worked.

49. During most weeks that they worked for Defendants, Plaintiffs worked in excess of 40 hours each week. Defendants violated D.C. Code Ann. § 32-1003(c) by failing to pay Plaintiffs an overtime compensation rate of at least one and one half times each Plaintiff's regular rate of pay for every hour worked in excess of 40 hours per week.

50. Defendants did not reasonably believe that their acts or omissions were not in violation of the DCMWA.

51. By their actions alleged herein, Defendants willfully violated the DCMWA's provisions for the payment of all wages for labor and services rendered, including overtime wages for employment in excess of 40 hours per week.

52. As a result of the unlawful acts of the Defendants, Plaintiffs have been deprived of hourly wages, including overtime wages, in an amount to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, attorneys' fees, litigation costs, and other compensation as provided by D.C. Code Ann. § 32-1012.

## COUNT III

### (Violation of the D.C. Wage Payment and Collection Law, *as amended* D.C. Code Ann. § 32-1301, *et seq.*)

53. Plaintiffs re-allege and incorporate by reference the allegations set forth in Paragraphs 1 to 52 of the Complaint.

54. At all times relevant to this action, Plaintiffs were employed by Defendants within the meaning of the D.C. Wage Payment and Collection Law, *as amended*, D.C. Code Ann. § 32-1301, *et seq.* ("DCWPCL"), and are entitled to the rights, protections, and benefits provided under the DCWPCL.

55. Defendants violated D.C. Code Ann. § 32-1302 by failing to pay Plaintiffs with checks that were payable upon demand by the bank upon which drawn.

56. Defendants violated D.C. Code Ann. § 32-1303 by failing to pay Plaintiffs all wages due upon the next regular payday or within seven days from the date of each Plaintiff's resignation.

57. Defendants violated D.C. Code Ann. § 32-1303 by failing to pay Plaintiff Victor Pleitez wages for his unpaid vacation time, unused vacation time, unused sick time, and promised cash bonuses upon the next regular payday or within seven days from the date of Victor Pleitez's resignation.

58. Defendants' refusal to pay wages in compliance with D.C. Code Ann. §§ 32-1302 and 32-1303 was willful within the meaning of the DCWPA.

59. As a result of the unlawful acts of the Defendants, the Plaintiffs have been deprived of hourly wages in an amount to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, attorneys' fees, litigation costs, and other compensation as provided by D.C. Code Ann. §§ 32-1303 and 32-1308.

## COUNT IV

### (Claims at Common Law for Breach of Employment Contract)

60. Plaintiffs re-allege and incorporate by reference the allegations set forth in Paragraphs 1 to 59 of the Complaint.

61. Defendants entered into binding contracts with each of the Plaintiffs for employment imposing duties on the parties, including, but not limited to, the payment of hourly wages in exchange for each Plaintiff's service in the Defendants' employ.

62. Defendants' contract with Plaintiff Victor Pleitez also included, but was not limited to, Defendants' promise to pay hourly wages for vacation leave, hourly wages for sick leave, and cash bonuses in exchange for Plaintiff Victor Pleitez's service in the Defendants' employ.

63. Plaintiffs performed under the contracts by faithfully and efficiently executing their work duties.

64. Defendants' failure to perform their duties with respect to the payment of wages constitutes a breach of contract by the Defendants in regard to each of the Plaintiffs.

65. As a result of the Defendants' breach, each Plaintiff suffered economic harm and is entitled to the payment of wages due, prejudgment interest, other compensation that Plaintiffs would have received but for Defendants' breach of contract, and compensatory damages.

## COUNT V

### (Claims at Common Law for Quantum Meruit)

66. Plaintiffs re-allege and incorporate by reference the allegations set forth in Paragraphs 1 to 65 of the Complaint.

67. Throughout their employment by Defendants, Plaintiffs rendered valuable services to the Defendants in the form of renovations and refurbishments to the homes and commercial offices of Defendants' clients.

68. Defendants accepted and enjoyed the services of the Plaintiffs under such circumstances that reasonably notified Defendants that all Plaintiffs expected to be paid by Defendants.

69. Defendants admitted and confirmed the Plaintiffs' expectations that they would be paid when Defendants paid the expected wages at the beginning of Plaintiffs' employment and by subsequently repeating promises to pay Plaintiffs for past wages that Defendants had failed to pay.

70. As a result of Defendants' actions, Plaintiffs suffered economic harm and are entitled to equitable relief in the form of wages for the services they provided to Defendants.

V.  **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs pray this Court enter an order, jointly and severally against Defendants:

1. Granting judgment in favor of Plaintiffs against Defendants for nonpayment of minimum wages under Counts I and II and awarding Plaintiffs their unpaid minimum wages and an additional amount as liquidated damages as authorized by 29 U.S.C. § 216 and D.C. Code Ann. § 32-1012;

2. Granting judgment in favor of Plaintiffs against Defendants for nonpayment of overtime wages under Counts I and II and awarding Plaintiffs the unpaid overtime wages and an additional amount as liquidated damages as authorized by 29 U.S.C. § 216 and D.C. Code Ann. § 32-1012;

3. Granting judgment in favor of Plaintiffs against Defendants for nonpayment of promised wages under Count III and awarding Plaintiffs their unpaid wages as authorized by D.C. Code Ann. §§ 32-1303 and 32-1308;

4. Granting judgment in favor of Plaintiffs against Defendants for nonpayment of all wages earned upon the next regular payday or within seven days from the date of each Plaintiff's resignation under Count III and awarding Plaintiffs liquidated damages as authorized by D.C. Code Ann. §§ 32-1303 and 32-1308;

5. Granting judgment in favor of Plaintiffs against Defendants for breach of the Defendants' employment contracts with each of the Plaintiffs under Count IV and awarding Plaintiffs their wages due, prejudgment interest, other compensation that Plaintiffs would have received but for Defendants' breach of contract, and compensatory damages;

6. Granting judgment in favor of Plaintiffs against Defendants for quantum meruit under Count V and awarding Plaintiffs equitable relief in the form of wages for the services they provided to Defendants;

7. Awarding Plaintiffs the costs of this action under Counts I, II, and III;

8. Awarding counsel reasonable attorneys' fees under Counts I, II, and III; and

9. Granting such further relief as this Court deems just and equitable.

## VI. PRAYER FOR JURY TRIAL

WHEREFORE Plaintiffs pray a trial by jury on all allegations contained herein.

Respectfully submitted,

_____
Tirzah S. Fitzkee (D.C. Bar No. 497295)
John M. Faust (D.C. Bar No. 433553)
VINSON & ELKINS L.L.P.
1455 Pennsylvania Avenue, N.W., Suite 600
Washington, DC 20004-1008
Telephone: (202) 639-6500
Facsimile: (202) 639-6604

Susan E. Huhta (D.C. Bar No. 453478)
Laura E. Varela
   (*pro hac vice* motion pending )
WASHINGTON LAWYERS'
COMMITTEE FOR CIVIL RIGHTS
AND URBAN AFFAIRS
11 Dupont Circle, N.W., Suite 400
Washington, D.C. 20036
Telephone: (202) 319-1000
Facsimile: (202) 319-1010

## CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

### I (a) PLAINTIFFS

Victor Manuel Pleitez, Jorge Alfaro Pleitez, and Wil Francisco Ardon

### DEFENDANTS

Stephen Carney and PiersBalmoral, LLC

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** _____
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)  Loudon County
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

Tirzah S. Fitzkee
Vinson & Elkins L.L.P.
1455 Pennsylvania Ave., NW STE 600
Washington, DC 20004
(202) 639-6500

**ATTORNEYS (IF KNOWN)**

### II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ● 3 Federal Question (U.S. Government Not a Party)
- ○ 2 U.S. Government Defendant
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

### III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

### IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

**○ A. Antitrust**
- ☐ 410 Antitrust

**○ B. Personal Injury/Malpractice**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Medical Malpractice
- ☐ 365 Product Liability
- ☐ 368 Asbestos Product Liability

**○ C. Administrative Agency Review**
- ☐ 151 Medicare Act

Social Security:
- ☐ 861 HIA ((1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g)
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g)

Other Statutes
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**○ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**○ E. General Civil (Other)** OR **○ F. Pro Se General Civil**

Real Property
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

Personal Property
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

Bankruptcy
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

Property Rights
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

Federal Tax Suits
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

Other Statutes
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ◉ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☒ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
- ◉ 1 Original Proceeding
- ○ 2 Removed from State Court
- ○ 3 Remanded from Appellate Court
- ○ 4 Reinstated or Reopened
- ○ 5 Transferred from another district (specify)
- ○ 6 Multi district Litigation
- ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
28 U.S.C. 201 Action to recover unpaid wages and other unpaid monetary compensation

**VII. REQUESTED IN COMPLAINT**   CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 ☐   DEMAND $ _____   Check YES only if demanded in complaint
JURY DEMAND:   YES ☒   NO ☐

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE May 2, 2008   SIGNATURE OF ATTORNEY OF RECORD *[signature]*

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The **JS-44** civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

    I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

    III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

    IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

    VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

    VIII.    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.