UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| VICTOR MANUEL PLEITEZ, et al., <br><br> Plaintiffs, <br><br> v. <br><br> STEPHEN CARNEY, et al., <br><br> Defendants. | Civil Action No.  08-0769 (JDB) |

## MEMORANDUM OPINION

The final issue in this case, and the only issue now before the Court, is determining the amount of damages to award to plaintiffs.  The Clerk of Court declared Stephen Carney and PiersBalmoral, LLC (collectively, "defendants") in default on June 25, 2008.  Thereafter, plaintiffs filed a motion for default judgment.  The Court granted the motion on November 26, 2008, but pursuant to Rule 55(b) of the Federal Rules of Civil Procedure, the Court ordered the parties to appear for an evidentiary hearing to determine damages.  The Court held the hearing on January 29, 2009.  Defendants did not appear.

Plaintiffs Victor Pleitez, Jorge Pleitez, and Wil Ardon (collectively, "plaintiffs") were employed by defendants for various periods from 2005 to 2007.  Plaintiffs claim that they were paid neither hourly wages nor full overtime wages and that defendants thereby violated the Fair Labor Standards Act, 29 U.S.C. §§ 201, et seq. ("FLSA"), the D.C. Minimum Wage Act Revision Act, D.C. Code Ann §§ 32-1001, et seq. ("DCMWA"), and the D.C. Wage Payment and Collection Law, D.C. Code Ann. §§ 32-1301, et seq. ("DCWPCL").  Under the FLSA and

the DCMWA, employees are entitled to overtime wages at the rate of one-and-a-half times their regular hourly rate for each hour worked in excess of forty per week. 29 U.S.C. §§ 206-07; D.C. Code Ann. § 32-1003(a). Under the DCWPCL, employees are entitled to promised hourly wages even if an employment agreement is oral. See D.C. Code Ann. § 32-1302; Sanchez v. Magafan, 892 A.2d 1130, 1134 (D.C. 2006). Victor Pleitez also claims that he was promised vacation pay and a bonus but that he never received either. Vacation pay and bonuses qualify as "wages" under the DCWPCL. See D.C. Code Ann. § 32-1301(3) (defining wages as monetary compensation owed "for labor or services rendered, whether the amount is determined on a time, task, piece, commission or other basis of calculation."); Jones v. District Parking Mgmt. Co., 268 A.2d 860, 861-62 (D.C. 1970). Plaintiffs seek to collect what they are owed as well as liquidated damages in an equal amount, as permitted under the statutes. See 29 U.S.C. § 216(b); D.C. Code Ann. § 32-1012(a); id. § 32-1303(4). Plaintiffs also seek to collect attorneys fees and costs. See 29 U.S.C. § 216(b); D.C. Code Ann. § 32-1012(c); id. § 32-1308(b).

      When defendants default, courts must determine damages to effectuate judgment. See Fed. R. Civ. P. 55(b). Without defendants' participation in the case, however, the factual record is one-sided and incomplete. Of course, defendants cannot escape liability merely by refusing to participate. When a full documentary record is unavailable, a court may draw reasonable inferences from plaintiffs' recollections and whatever documentation has been presented. See Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 686-87 (1946), superseded by statute on other grounds, Portal-to-Portal Act of 1947, Pub. L. No. 80-49, 61 Stat. 84; Arias v. United States Serv. Indus., Inc., 80 F.3d 509, 510-11 (D.C. Cir. 1996) (per curiam). Here, plaintiffs submitted copies of some time sheets as well as some paychecks that were returned to them

because defendants' bank account had insufficient funds.  Plaintiffs also submitted sworn declarations setting out their best recollection of when they worked, what they were paid, and what they were not paid.  Finally, the Court received testimony from two plaintiffs, Jorge Pleitez and Wil Ardon, at the evidentiary hearing.  Based on this evidence and the reasonable inferences the Court may draw from it, the amount to be awarded to each plaintiff is set forth below.

**I.  Victor Pleitez**

Victor Pleitez does not seek to recover any unpaid hourly wages.  He does, however, seek to recover unpaid overtime wages.  Mr. Pleitez worked an average of 48 hours per week, see V. Pleitez Declaration ¶ 15, so was entitled to eight hours per week at a time-and-a-half rate, see 29 U.S.C. §§ 206-07; D.C. Code Ann. § 32-1003(a).  But he only received regular pay for those eight hours each week.  V. Pleitez Decl. ¶ 16.  Mr. Pleitez's hourly rate changed several times over the two years he worked for defendants.  Plaintiffs have identified three rates for the purposes of calculating unpaid overtime wages.  For the nine weeks from mid-April 2005 to mid-June 2005, Mr. Pleitez's hourly rate was $20; for the next 78 weeks from mid-June 2005 to December 16, 2006, his hourly rate was $23;[1] and for the final eighteen weeks of his employment, from December 17, 2006 to April 20, 2007, his hourly rate was $27.  See id. ¶¶ 5, 13. Based on these rates and Mr. Pleitez's estimation that he worked eight overtime hours per week, his unpaid overtime damages are set out in Table 1.

---

[1] Victor Pleitez recalls receiving several raises during the mid-June 2005 to December 16, 2006 time frame.  In mid-June 2005 his rate was raised to $22 and sometime thereafter his rate was raised to $24.  Because plaintiffs do not have access to the precise dates of the raises, they estimate that his hourly rate was $23 throughout this period.

| *Table 1: V. Pleitez Unpaid Overtime Wages* ||
|---|---|
| **Formula** | **Result** |
| [(.5) * ($20)] * 8 hrs/wk * 9 wks | $720 |
| [(.5) * ($23)] * 8 hrs/wk * 78 wks | $7,176 |
| [(.5) * ($27)] * 8 hrs/wk * 18 wks | $1,944 |
| Total | $9,840 |

Victor Pleitez also seeks to collect a bonus and vacation pay he was promised. He was promised a bonus upon completion of his first project, the renovation and refurbishment of a home in Washington, D.C. Id. ¶ 25. He was also promised two weeks of paid vacation per year. Id. ¶¶ 21-24. Mr. Pleitez did not take a vacation in his first year of employment; he did take one in his second year but was never paid for it. Id. Bonuses and vacation pay constitute "wages" under the DCWPCL. See D.C. Code Ann. § 32-1301(3); Jones, 268 A.2d at 861-62. The bonus defendants promised Mr. Pleitez was in the amount of $3,000. Plaintiffs' calculation of unpaid vacation pay is slightly more involved. Plaintiffs calculate Victor Pleitez's average hourly rate during each year of employment[2] and multiply that rate by the number of promised vacation weeks and then by the number of hours per week.[3] Based on those calculations, Mr. Pleitez is entitled to $3,743.20 for unpaid vacation and $3,000 for the unpaid bonus.

Victor Pleitez is also entitled to an equal amount in liquidated damages. The FLSA, DCMWA, and DCWPCL all have liquidated damages provisions. See 29 U.S.C. § 216(b);

---

[2] In year one, Mr. Pleitez's average hourly rate was [(9 weeks at $20/hr * 43 weeks at $23/hr)/52 weeks] = $22.48. In year two, his average hourly rate was [(35 weeks at $23/hr * 43 weeks at $27/hr)/52 weeks] = $24.31.

[3] In year one, the calculation is ($22.48 * 2 weeks * 40 hrs/wk) = $1,798.40. In year two, the calculation is ($24.31 * 2 weeks * 40 hrs/wk) = $1,944.80.

D.C. Code Ann. § 32-1012(a); id. § 32-1303(4).  Under FLSA and DCMWA, liquidated damages are calculated as an amount equal to the amount of unpaid wages.  See 29 U.S.C. § 216(b); D.C. Code Ann. § 32-1012(a).  For the DCWPCL, liquidated damages are calculated as "10 per centum of the unpaid wages for each working day during which such failure shall continue after the day upon which payment is hereunder required, or an amount equal to the unpaid wages, whichever is smaller."  D.C. Code Ann. § 32-1303(4).  Because the employer must pay wages within seven days of an employee's resignation, see id. § 32-1303(2), and because Mr. Pleitez resigned in April 2007, the lesser amount due under the DCWPCL is the "amount equal to the unpaid wages."  Therefore, Mr. Pleitez is entitled to liquidated damages in an amount equal to the sum of his unpaid overtime wages, unpaid vacation, and unpaid bonus.  Victor Pleitez's total damages, therefore, are summarized in Table 2.

| *Table 2: V. Pleitez Total Damages* | |
|---|---|
| Unpaid Overtime Wages | $9,840.00 |
| Unpaid Vacation | $3,743.20 |
| Unpaid Bonus | $3,000.00 |
| *Subtotal* | $16,583.20 |
| Liquidated Damages | $16,583.20 |
| Total | $33,166.40 |

**II.  Jorge Pleitez**

Jorge Pleitez seeks both unpaid hourly wages and unpaid overtime wages.  His hourly rate changed several times over the approximately 49 weeks he was employed by defendants.  Plaintiffs have identified two rates for purposes of calculating Mr. Pleitez's unpaid hourly and overtime wages.  For the 31 weeks from mid-May 2006 to December 16, 2006, Mr. Pleitez's

hourly rate was $13;[4] for the final eighteen weeks of his employment, from December 17, 2006 to April 20, 2007, his hourly rate was $15. See J. Pleitez Declaration ¶ 11.

Jorge Pleitez has two claims to unpaid hourly wages. First, while his hourly rate was $13, two of Mr. Pleitez's paychecks, totaling $1,612, were returned for lack of sufficient funds. Id. ¶¶ 16-17. Second, he was not paid at all for the first eight weeks he was earning $15 per hour. Id. ¶¶ 12-14. Mr. Pleitez has time sheets for these eight weeks. Multiplying the first 40 hours of each time sheet by $15, plaintiffs calculate that Mr. Pleitez is owed $3,660 in unpaid hourly wages for this period.[5] Mr. Pleitez does not claim that he was not paid during the final ten weeks of his employment. In sum, Jorge Pleitez's unpaid hourly wages total $5,272 ($1,612 plus $3,660).

As for unpaid overtime wages, Jorge Pleitez, like Victor Pleitez, recalls having worked an average of 48 hours per workweek. Id. ¶ 18. Under the FLSA and DCMWA, Jorge Pleitez is entitled to pay for eight hours at a time-and-a-half rate per week. See 29 U.S.C. §§ 206-07; D.C. Code Ann. § 32-1003(a). The calculation for the first 31 weeks of his employment, when he was earning $13 per hour, is straightforward. Mr. Pleitez was paid for the eight overtime hours, but he was not paid at a time-and-a-half rate, to which he is entitled. The calculation for the final eighteen weeks, when he was earning $15 per hour, is slightly more complicated. For the first

---

[4] Jorge Pleitez recalls receiving several raises during the mid-May 2006 to December 16, 2006 time frame. His initial hourly rate was $12. His rate was raised to $13 and then $14. Because plaintiffs do not have access to the precise dates of the raises, they estimate that Mr. Pleitez's hourly rate was $13 throughout this period.

[5] During these eight weeks, Mr. Pleitez worked 48, 32, 40, 8, 8, 43, 36, and 53 hours. Plaintiffs cap each week at 40 hours to separate unpaid hourly wages from unpaid overtime wages. Based on this methodology, Mr. Pleitez is entitled to pay for 244 hours at $15 per hour.

eight weeks, Mr. Pleitez was not paid at all. Therefore, his unpaid overtime for those weeks is calculated by multiplying the time-and-a-half rate (i.e., $22.50) by the average number of overtime hours per week. But Mr. Pleitez makes no claim for unpaid wages during the final ten weeks. Therefore, the only inference the Court can draw while maintaining consistency in his claims is that Mr. Pleitez was paid for his work during this period. Jorge Pleitez testified on this subject and could not state that he had not been paid at his regular hourly rate for this time. And if he was paid during this period, then the Court must presume that he received payment for his overtime hours, albeit not at the time-and-a-half rate. Therefore, the Court arrives at a slightly lower total for unpaid overtime wages than plaintiffs have requested, as reflected in Table 3.

| *Table 3: J. Pleitez Unpaid Overtime Wages* ||
|---|---|
| **Formula** | **Result** |
| [(.5) * ($13)] * 8 hrs/wk * 31 wks | $1,612 |
| [(1.5) * ($15)] * 8 hrs/wk * 8 wks | $1,440 |
| [(.5) * ($15)] * 8 hrs/wk * 10 wks | $600 |
| Total | $3,652 |

Jorge Pleitez is also entitled to an equal amount in liquidated damages. As with the calculation for Victor Pleitez, Jorge Pleitez is entitled to an amount equal to the sum of his unpaid hourly wages and unpaid overtime wages under the FLSA, DCMWA, and DCWPCL. See 29 U.S.C. § 216(b); D.C. Code Ann. § 32-1012(a); id. § 32-1303(4). Jorge Pleitez's total damages, therefore, are summarized in Table 4.

| *Table 4: J. Pleitez Total Damages* | |
|---|---|
| Unpaid Hourly Wages | $5,272 |
| Unpaid Overtime Wages | $3,652 |
| *Subtotal* | $8,924 |
| Liquidated Damages | $8,924 |
| <u>Total</u> | <u>$17,848</u> |

**III.  Wil Ardon**

Wil Ardon seeks both unpaid hourly wages and unpaid overtime wages.  His hourly rate changed once during the approximately 40 week period he was employed by defendants.  For the first 34 weeks of his employment, Mr. Ardon's hourly wage was $17.  When defendants stopped paying him, Mr. Ardon quit the job on or around January 8, 2007.  He returned to work a week later, but his hourly wage had been reduced to $15.  Ardon Declaration ¶¶ 8-9.

Mr. Ardon has two claims to unpaid hourly wages.  First, from November 25, 2006 to January 8, 2007 -- while his hourly wage was $17 -- Mr. Ardon received no paychecks.  Id. ¶¶ 10-12.  Mr. Ardon has time sheets reflecting the hours he worked for some of these weeks and a firm recollection of the hours he worked for the rest.[6]  Multiplying the first 40 hours of each week by $17, plaintiffs calculate that Mr. Ardon is owed $4,046 in unpaid hourly wages for this period.[7]  However, Mr. Ardon recalls defendants giving him a $500 cash payment during this

---

[6] For the three weeks from November 25, 2006 to December 16, 2006, Mr. Ardon recalls working 40, 38, and 64 hours.  For the three weeks from December 17, 2006 to January 7, 2007, Mr. Ardon has time sheets showing that he worked 41, 40, and 32 hours.  Mr. Ardon also has a time sheet showing that he worked eight hours on January 8, 2007.

[7] As with Jorge Pleitez, plaintiffs cap each week at 40 hours to separate unpaid hourly wages from unpaid overtime wages.  Based on this methodology, Mr. Ardon is entitled to pay for 238 hours at $17 per hour.

period, thereby offsetting a portion of his unpaid hourly wages. Id. ¶ 10. Hence, Mr. Ardon's unpaid hourly wages during this period come to $3,546. Second, for the period after January 8, 2007 until late February 2007 (when he stopped working), Mr. Ardon makes no general claim of nonpayment. However, one of his paychecks, dated February 28, 2007 and in the amount of $660, was returned to him for insufficient funds. Id. ¶ 14. In sum, then, Mr. Ardon is entitled to $4,206 in unpaid hourly wages ($3,546 plus $660).

With regard to unpaid overtime wages, Mr. Ardon, like the other plaintiffs, recalls having worked an average of 48 hours per workweek. Id. ¶ 15. Under the FLSA and DCMWA, Mr. Ardon is entitled to pay for eight hours at a time-and-a-half rate each week. See 29 U.S.C. §§ 206-07; D.C. Code Ann. § 32-1003(a). For the first 28 weeks of his employment, when he was earning $17 per hour, Mr. Ardon claims that he received overtime pay but not at the time-and-a-half rate. Thus, he is entitled to the difference for that period ($8.50 per hour). For the next six weeks -- while his hourly rate remained $17 -- Mr. Ardon was not paid at all. Therefore, his overtime pay during these six weeks is calculated by using the full time-and-a-half rate (i.e., $25.50). In his final six weeks of employment, when his hourly rate had been reduced to $15, Mr. Ardon does not claim that he was not paid at all. Rather, he claims that his paycheck was returned for lack of sufficient funds. To treat the plaintiffs consistently, the Court must infer that Mr. Ardon received payment for his overtime work, just not at the appropriate rate.[8] Hence, the Court arrives at a slightly lower total for unpaid overtime wages than plaintiffs requested, as reflected in Table 5.

---

[8] Mr. Ardon testified at the damages hearing, but the Court found that he was not clear on whether he had been paid at the regular rate over this final six week period.

| Table 5: W. Ardon Unpaid Overtime Wages ||
|---|---|
| **Formula** | **Result** |
| [(.5) * ($17)] * 8 hrs/wk * 28 wks | $1,904 |
| [(1.5) * ($17)] * 8 hrs/wk * 6 wks | $1,224 |
| [(.5) * ($15)] * 8 hrs/wk * 6 wks | $360 |
| Total | $3,488 |

Mr. Ardon is also entitled to an equal amount in liquidated damages. As with the calculation for the other plaintiffs, Mr. Ardon is entitled to an amount equal to the sum of his unpaid hourly wages and unpaid overtime wages under the FLSA, DCMWA, and DCWPCL. See 29 U.S.C. § 216(b); D.C. Code Ann. § 32-1012(a); id. § 32-1303(4). Mr. Ardon's total damages, therefore, are summarized in Table 6.

| Table 6: W. Ardon Total Damages ||
|---|---|
| Unpaid Hourly Wages | $4,206 |
| Unpaid Overtime Wages | $3,488 |
| *Subtotal* | $7,694 |
| Liquidated Damages | $7,694 |
| Total | $15,388 |

## IV. Attorneys' Fees & Costs

Finally, plaintiffs are entitled to attorneys' fees and costs. Employees whose rights under the FLSA, DCMWA, and DCWPCL are violated are entitled to "reasonable" attorneys' fees and costs. See 29 U.S.C. § 216(b); D.C. Code Ann. § 32-1012(c); id. § 32-1308(b). "The initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." Blum v. Stenson, 465 U.S.

886, 888 (1984). The reasonableness of an hourly rate is normally determined by the prevailing market rate in a community. Id. at 895. An attorney's regular billing rate is presumptively reasonable as long as it "reflect[s], among other things, the level of skill necessary to conduct the case and the attorney's reputation." Nat'l Ass'n of Concerned Veterans v. Sec'y of Defense, 675 F.2d 1319, 1326 (D.C. Cir. 1982). Attorneys without a customary billing rate may establish the prevailing market rate for their services with published surveys of prevailing rates, like the Laffey matrix. See Covington v. District of Columbia, 57 F.3d 1101, 1109 (D.C. Cir. 1995).

Plaintiffs seeks attorneys' fees for four attorneys who have represented them in this case: two attorneys at Vinson & Elkins, Tirzah Lollar and John Faust, and two attorneys at the Washington Lawyers' Committee for Civil Rights and Urban Affairs, Laura Varela and Susan Huhta. Vinson & Elkins has exercised billing judgment, reducing the number of hours for which they seek compensation and providing discounted billing rates. See Lollar Declaration ¶¶ 4-11. The firm does not seek compensation for time expended by a third Vinson & Elkins attorney, nor does it seek compensation for staff time spent. Id. Plaintiffs seek $35,951.25 in fees for Vinson & Elkins attorneys as well as $778.05 in costs. The rates for the Washington Lawyers' Committee attorneys are established by the Laffey matrix. See Varela Declaration ¶¶ 11-15. Plaintiffs seek $14,679.50 in fees for Washington Lawyers' Committee attorneys, after the exercise of billing judgment. The Court is satisfied that all attorneys' rates are at the prevailing market rate and that the hours expended are reasonable, and hence will award the requested amounts plus the $778.05 in reasonable costs that are sought.

## V.  Conclusion

For the reasons set forth above, it hereby **ORDERED** that defendants shall pay damages as follows:

1. To Victor Pleitez, $16,583.20 in unpaid wages and $16,583.20 in liquidated damages;

2. To Jorge Pleitez, $8,924 in unpaid wages and $8,924 in liquidated damages;

3. To Wil Ardon, $7,694 in unpaid wages and $7,694 in liquidated damages;

4. To Vinson & Elkins, $35,951.25 in fees and $778.05 in costs; and

5. To the Washington Lawyers' Committee, $14,679.50 in fees.

A separate order has been issued today.

                                          /s/
                                JOHN D. BATES
                       United States District Judge

Date: January 30, 2009

Copies to:

Tirzah S. Lollar
VINSON & ELKINS L.L.P.
1455 Pennsylvania Ave., N.W., Suite 600
Washington, DC 20014
(202) 639-6500
Fax: (202) 639-6604
    *Counsel for plaintiff*

Stephen Carney
25215 Mastery Place
Aldie, VA 20105
    *Defendant*

PiersBalmoral, L.L.C.
Stephen Carney, Registered Agent
25215 Mastery Place
Aldie, VA 20105
    *Defendant*